**W. Michael KIMES; J. Colette Boykin,
Plaintiffs–Appellants,**

**v.**

**Peter G. STONE, Judge, Superior Court;
Robert L. Mezzetti, II; Henry Mariani;
Robert Machado, Defendants–Appellees.**

No. 94–17210.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1996.

Decided May 22, 1996.

Robert H. Gonzales, Laguna Niguel, California, for plaintiffs-appellants.

Barbara H. Choi and Lisa B. Berkowitz, Deputy County Counsel, San Jose, California, for defendant-appellee Stone.

William J. Elfving and David P. Eby, Hoge, Fenton, Jones & Appel, San Jose, California, for defendants-appellees Mezzetti, Mariani and Machado.

Before: NORRIS and WIGGINS, Circuit Judges, and JONES,* District Judge.

* Hon. Napoleon A. Jones, Jr., United States District Judge for the Southern District of California, sitting by designation.

WIGGINS, Circuit Judge:

## OVERVIEW

W. Michael Kimes and J. Colette Boykin, brother and sister, (collectively "Kimes") brought a claim in the United States District Court for the Northern District of California under 42 U.S.C. § 1983 against Santa Clara County Superior Court Judge Peter Stone ("Judge Stone") and attorneys Robert L. Mezzetti, Henry Mariani, and Robert Machado ("the Attorney Defendants"). Kimes' complaint alleged that Judge Stone and the Attorney Defendants conspired against Kimes in estate litigation in state court to "overturn" a jury verdict, thus depriving Kimes, without due process of law, of property he would have otherwise received from his father's estate. The district court granted Judge Stone's and the Attorney Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), relying on Cal.Civ.Code § 47(b), which immunizes parties involved in litigation from civil liability for communications made in the course of that litigation. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm the dismissal in favor of Judge Stone and reverse the dismissal in favor of the Attorney Defendants.

## FACTS

The following is based entirely on Kimes' complaint and the exhibits attached thereto.

Kimes brought suit against his stepmother, Marie Kimes ("Marie") in Santa Clara County Superior Court, alleging that she had induced Kimes' terminally ill father to draft a will and trust disinheriting Kimes. Kimes' brother, Kevin Kimes ("Kevin"), was also named as a defendant. Judge Taketsugu Takei presided over an almost four week jury trial, and on July 11, 1990, the jury returned a verdict, finding that Marie had used fraud and undue influence in inducing Kimes' father to sign the will and trust. The jury set aside the will and trust, but did not grant any damages to Kimes. During the trial, Kimes was represented by Mariani, his co-plaintiff sister was represented by Mezzetti, and Kevin was represented by Machado.

As a result of the verdict, the estate became intestate, subject to division pursuant to the California Probate Code. Soon after the verdict, an Internal Revenue Service ("IRS") lawyer met with counsel for all parties, advising them that the IRS intended to impose a substantial tax assessment against the decedent's estate because the will and trust had been set aside, and therefore did not qualify for the marital deduction. The Attorney Defendants and attorneys for Marie had begun settlement negotiations to decide how the estate property would be divided, and the IRS lawyer purportedly told them that the case should not be settled without IRS participation.

Pursuant to the jury verdict, Judge Takei issued an interlocutory order on August 20, 1990 declaring the will and trust null and void and imposing a constructive trust upon Marie. Marie filed a Motion for New Trial/JNOV on October 2, 1990, which was taken under submission by Judge Takei on October 26, 1990. Judge Takei failed to rule on the motion within sixty days, so the motion was denied as a matter of California procedural law.

Settlement negotiations continued among the Attorney Defendants, without the participation of the IRS. The attorneys apparently came to an agreement, and Kimes was informed "*only* that Marie Kimes had agreed to pay $2.4 Million ... to them and that they would work out the details." Compl. at 4 (emphasis· in original). Without Kimes' knowledge, "a transfer to a different judge was being maneuvered" by the Attorney Defendants. *Id.* Unbeknownst to Kimes, the case was transferred by Judge Takei to Judge Stone on February 25, 1991.

According to the complaint, the Attorney Defendants "entered into a private extra-judicial agreement with Judge Stone to have the case transferred to him" from Judge Takei as part of a scheme by the Attorney Defendants to avoid the IRS tax liability, and to create an emotional distress award which would not be taxable and from which the attorneys would receive a large contingency fee. *Id.* at 5–6.[1] According to the complaint,

---

1. Kimes' complaint did not accuse Judge Takei of any wrongdoing.

the Attorney Defendants knew that the Motion for New Trial/JNOV would be denied as a matter of law after sixty days, and that any ruling after that date would be void because of the court's lack of jurisdiction. Nonetheless, the Attorney Defendants "agreed and conspired to draft in their own language, a 'Ruling' that was purportedly to emanate from Judge Stone." *Id.* at 6. In support of his claim, Kimes attached to his complaint a letter from Attorney Mezzetti to Marie's attorney (with copies to Attorneys Mariani and Machado) which included a draft of the proposed order by Judge Stone, purportedly drafted by the Defendant Attorneys, which is virtually identical to the order issued soon afterward by Judge Stone. "All four of the defendants ... had specific knowledge the 'Ruling' was fraudulent, lacking in jurisdiction and lacking any legal support whatsoever ... yet they all ... created the appearance of having a 'hearing' on [the motion] to attempt to give legitimacy to their scheme." *Id.*

On March 25, 1991, Judge Stone issued a ruling on the Motion for New Trial/JNOV, declaring that the will and trust were valid, but awarding Kimes $2.4 million for emotional distress damages. Because Kevin's testimony at trial had helped convince the jury that Kimes' father did not intend to disinherit him, the Attorney Defendants advised Kimes to enter into a sharing agreement with Kevin regarding the $2.4 million award, under which Kevin would receive the share of his father's estate provided for in the will and trust.

"The IRS found out about the legal maneuvering of the attorneys and filed a $1.7 Million ... lien on the estate" of the decedent. *Id.* at 7. Shortly thereafter, Marie filed for Chapter 11 bankruptcy to prevent foreclosure on the estate property because of the tax lien and the $2.4 million judgment. In addition, Marie sued Kimes to set aside a Stipulation that was part of the $2.4 million judgment and provided the terms for payment of the judgment.

Marie entered into a settlement with the IRS and the State of California, agreeing to pay a total of $447,000 in taxes from the estate. The estate has incurred over $100,-000 in fees as a result of the proceeding, and Kimes has incurred substantial attorney's fees in defending the lawsuit by Marie, in protecting the interests of the estate, and in defending a lawsuit filed by Kevin at the insistence of the Attorney Defendants to enforce the sharing agreement regarding the $2.4 million judgment. Kimes was paid approximately $800,000 of the $2.4 million judgment from his mother, and the Attorney Defendants each received approximately $100,000 of the $800,000 as part of their contingency fee. The estate is currently in bankruptcy, and Kimes expects the litigation to continue.

## PROCEDURAL HISTORY

On September 13, 1994, Kimes brought suit against Judge Stone and the Attorney Defendants for damages in the United States District Court for the Northern District of California, alleging that Judge Stone's and the Attorney Defendants' conduct deprived them "of their civil rights guaranteed under the Constitution," by depriving them of property rights in their father's estate and causing the unwarranted imposition of state and federal taxes in violation of 42 U.S.C. §§ 1983, 1985, and 1986. *Id.* at 13. The complaint also alleges that Kimes did not learn of the conspiracy until mid-June 1994.

On October 24, 1994, Judge Stone filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that the complaint did not satisfy Fed.R.Civ.P. 8(a), that Kimes' action was barred by the statute of limitations, and that Judge Stone enjoys absolute immunity for acts undertaken in his judicial capacity. The Attorney Defendants joined in Stone's motion, and also moved for dismissal on the ground that their actions were protected by Cal.Civ.Code § 47, the litigation privilege. Kimes withdrew his claims under 42 U.S.C. §§ 1985 and 1986, and opposed the Attorney Defendants' motion, arguing with respect to § 47(b) only that the Attorney Defendants' conspiring with Judge Stone did not qualify as a "communication" immunized by § 47(b). On December 1, 1994, the district court granted Judge Stone's and the Attorney Defendants' motions to dismiss,

finding that Kimes' claim was barred by Cal. Civ.Code § 47(b).

## DISCUSSION

Kimes appeals the district court's dismissal of his 42 U.S.C. § 1983 claim, arguing that the district court erred in determining that the litigation privilege provided for by Cal. Civ.Code § 47(b) barred Kimes' claim. Kimes' counsel conceded at oral argument that Kimes' claim against Judge Stone is barred by judicial immunity,[2] and we thus affirm the district court's dismissal in favor of Judge Stone. We find, however, that the district court erred in applying Cal.Civ.Code § 47(b) as a bar to Kimes' § 1983 claim against the Attorney Defendants, and finding no other basis for affirming the district court, we reverse the dismissal in favor of the Attorney Defendants.

### I. Standard of Review

A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. *Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir.1995). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Parks Sch. of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). We can affirm the district court's dismissal for failure to state a claim on any basis fairly supported by the record. *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 564 (9th Cir.1994); *Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir.1988).

### II. Litigation Immunity

Section 1983 subjects any person who deprives someone of a constitutional right under color of state law to civil liability for that deprivation. 42 U.S.C. § 1983 (1994). Although the Attorney Defendants are themselves private actors, private parties who corruptly conspire with a judge in conjunction with the judge's performance of an official judicial act are acting under color of state law for the purpose of § 1983, even if the judge himself is immune from civil liability.

*Dennis v. Sparks*, 449 U.S. 24, 28–29, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980). Nonetheless, the district court concluded that Kimes' § 1983 claim against the Attorney Defendants was barred by Cal.Civ.Code § 47(b), commonly known as the litigation privilege.

For the first time on appeal, Kimes' argues that the Supremacy Clause prohibits the application of California's litigation privilege to bar a federal civil rights claim. "We will review an issue that has been raised for the first time on appeal under certain narrow circumstances." *Parks*, 51 F.3d at 1488. "They are (1) to prevent a miscarriage of justice; (2) when a change in law raises a new issue while an appeal is pending; and (3) when the issue is purely one of law." *Id.* The decision to consider an issue not raised below is discretionary, and such an issue should not be decided if it would prejudice the other party. *Aronson v. Resolution Trust Corp.*, 38 F.3d 1110, 1114 (9th Cir. 1994); *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985). Because the Supremacy Clause issue is purely a question of law and consideration of the issue would not prejudice the Attorney Defendants' ability to present relevant facts that could affect our decision, we exercise our discretion to consider Kimes' argument.

Because the existence of § 1983 immunities is a matter of federal law, the district court erred in determining that the Attorney Defendants were entitled to litigation immunity pursuant to Cal.Civ.Code § 47(b). In addition, because the federal common law did not provide immunity for private parties accused of conspiring with a judge to deprive someone of their constitutional rights, the Attorney Defendants are not entitled to immunity under federal law.

In California, the litigation privilege applies to any "publication or broadcast" made in any "judicial proceeding." Cal.Civ. Code § 47 (West Supp.1996). "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)." *Rubin v.*

---

**2.** *See generally Ashelman v. Pope*, 793 F.2d 1072    (9th Cir.1986) (en banc).

*Green,* 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 831, 847 P.2d 1044, 1047 (1993). "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson,* 50 Cal.3d 205, 266 Cal.Rptr. 638, 642, 786 P.2d 365, 369 (1990). "Although originally enacted with reference to defamation, the privilege is now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution." *Id.* 266 Cal.Rptr. at 641, 786 P.2d at 368 (citations omitted). The privilege "protects attorneys, judges, jurors, witnesses, and other court personnel." *Mattco Forge, Inc. v. Arthur Young & Co.,* 5 Cal.App.4th 392, 402, 6 Cal.Rptr.2d 781, 787 (1992).

The district court erred in relying on § 47(b) immunity to bar Kimes' § 1983 claim.

Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.

*Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (citation omitted). While the Attorney Defendants attempt to characterize this language in *Martinez* as "dicta," it was explicitly treated as a holding and followed in *Howlett v. Rose,* 496 U.S. 356, 376–77, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332 (1990), and *Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988) ("[W]e have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted ... because the application of the state law would thwart the congressional remedy ... which of course already provides certain immunities for state officials.") (citing *Martinez* ). Moreover, this portion of *Martinez* has been followed by this and other circuits. *See, e.g., Sosa v. Hiraoka,* 920 F.2d 1451, 1460 n. 3 (9th Cir.1990) (noting that the Supreme Court has "held that state law immunities have no force against § 1983 suits where the state law immunity purports to provide immunity 'over and above those already provided in § 1983' ") (quoting *Howlett,* 496 U.S. at 375, 110 S.Ct. at 2442); *see also Palmer v. City of Monticello,* 31 F.3d 1499, 1504 (10th Cir. 1994) (following *Martinez* in holding that a Utah provision similar to Cal.Civ.Code § 47(b) does not bar a § 1983 claim). Thus, the litigation immunity provided in Cal.Civ. Code § 47(b) does not apply to Kimes' § 1983 cause of action.[3]

▮ Nonetheless, the Attorney Defendants argue in their brief that "[t]he Supreme Court has often ruled that the creation of certain immunities under section 1983 is appropriate," and that we "should recognize the California state policy granting immunity to attorneys in limited circumstances under [§ 47(b) ], and apply said immunity" to Kimes' claim. Contrary to the Attorney Defendants' characterization of

---

3. Even if we had declined to address Kimes' supremacy clause argument, we are not entirely convinced that the Attorney Defendants would have been entitled to immunity for their alleged conduct because such conduct appears to constitute "extrinsic fraud," which is not covered by § 47(b). *Silberg,* 266 Cal.Rptr. at 638, 786 P.2d at 370. A judgment has been obtained by extrinsic fraud where " 'the aggrieved party [has been] deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' " *Moore v. Conliffe,* 7 Cal.4th 634, 29 Cal.Rptr.2d 152, 157 n. 5, 871 P.2d 204, 209 n. 5 (1994) (quoting 8 Witkin, California Procedure § 204 (3d ed. 1985)). Examples of extrinsic fraud include: "Keeping the unsuccessful party

away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or, where an attorney fraudulently pretends to represent a party, and connives at his defeat or, being regularly employed, corruptly sells out his client's interest." *Kachig v. Boothe,* 22 Cal.App.3d 626, 633, 99 Cal.Rptr. 393, 397 (1971) (quoting *Pico v. Cohn,* 91 Cal. 129, 25 P. 970, 971, *aff'd,* 91 Cal. 129, 27 P. 537 (1891)) (both cases cited by *Silberg,* 266 Cal.Rptr. at 643, 786 P.2d at 370); *see also In re Marriage of Stevenot,* 154 Cal.App.3d 1051, 1068–69, 202 Cal.Rptr. 116, 128–29 (1984) (giving examples of acts constituting extrinsic fraud). Kimes' complaint accuses his attorneys of selling out his interests.

§ 1983 immunity caselaw, the Supreme Court has not "created" any immunities applicable to § 1983; rather, it has recognized that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S.Ct. 2606, 2612–13, 125 L.Ed.2d 209 (1993) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951)).

> Certain immunities were so well established in 1871, when § 1983 was enacted, that we presume that Congress would have specifically so provided had it wished to abolish them. Although we have found immunities in § 1983 that do not appear on the face of the statute, "[w]e do not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy."

*Id.*, at 268, 113 S.Ct. at 2613 (quoting *Tower v. Glover*, 467 U.S. 914, 922–23, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984)) (other citations omitted). Thus, regardless of any policy argument that could weigh in favor of adopting an additional § 1983 immunity, the Attorney Defendants are only immunized from Kimes' claim if their alleged conduct was immunized under the common law.

Attorneys were entitled to some immunity at the common law. "The common law provided absolute immunity from subsequent damages liability for all persons-governmental or otherwise-who were integral parts of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96 (1983). This protection extended to private counsel and witnesses for their involvement in the "judicial proceeding itself." *Id.* at 334, 103 S.Ct. at 1115. However, in *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), the Supreme Court relied on the common law in concluding that private actors are not entitled to the absolute immunity granted to some government officials, such as prosecutors and judges, *id.* at 164–65, 112 S.Ct. at 1831–32, and that "private persons, who conspire with state officials to violate constitutional rights" are not entitled to the good faith immunity, also known as qualified immunity, available to other public officials. *Id.* at 168–69, 112

S.Ct. at 1834. *See also Tower*, 467 U.S. at 921, 104 S.Ct. at 2825 (under the common law, a privately retained lawyer would not "have enjoyed immunity from tort liability for intentional misconduct"); *Dennis*, 449 U.S. at 29, 101 S.Ct. at 187 (finding "nothing indicating that, historically, judicial immunity insulated from damages liability those private persons who corruptly conspire with the judge"); *Religious Technology Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 10 (9th Cir. 1992) (finding no cases indicating that the immunity articulated by Cal.Civ.Code § 47(b) "has been recognized as a matter of federal common law"). Thus, there was no immunity at common law that would have shielded the Attorney Defendants from liability for the acts alleged in Kimes' complaint.

Because state immunity law does not govern § 1983 claims, and the common law did not provide immunity to private attorneys conspiring with a judge to deprive someone of their constitutional rights, Kimes' complaint does not reveal that his claim against the Attorney Defendants is barred by any immunity.

### III. Statute of Limitations

Because § 1983 does not contain its own statute of limitations provision, under *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), we apply the statute of limitations for personal injury claims in the state in which the claim accrued. Thus, the limitations period for § 1983 claims in California is one year. *Golden Gate Hotel Ass'n v. San Francisco*, 18 F.3d 1482, 1485 (9th Cir.1994). Under federal law, "the limitations period accrues when a party knows or has reason to know of the injury" which is the basis of the cause of action. *Id.* at 1486. Kimes' complaint reveals that he learned of the alleged conspiracy that deprived him of his constitutional rights in mid-June 1994. The complaint, filed in September 1994, alleges several times that Kimes had no knowledge of the alleged conspiracy between Judge Stone and the Attorney Defendants while it was occurring, and nothing in the complaint reveals that they "should have known" about it before June 1994. Thus, Kimes' complaint does not

reveal that his § 1983 claim against the Attorney Defendants is barred by the statute of limitations.

IV. Short and Plain Statement of Kimes' Claim

Fed.R.Civ.P. 8(a), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief," does not provide a separate ground for affirming the district court. Rule 8(f) indicates that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). All that is required is that the complaint gives "the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Datagate, Inc. v. Hewlett–Packard Co.*, 941 F.2d 864, 870 (9th Cir.1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992). Kimes' complaint fairly satisfies this requirement, by, at a minimum, making specific allegations which could establish the elements of a § 1983 claim based upon procedural due process: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993). The complaint reveals (1) that Kimes suffered, *inter alia*, a loss of a certain property right in his father's estate, (2) that he was deprived of this property right by the Attorney Defendants acting in conjunction with Judge Stone, and (3) that an extra-judicial agreement between the Attorney Defendants and Judge Stone and the allegedly fraudulent court proceeding circumvented the "due course of justice." Compl. at 13. Accordingly, Fed.R.Civ.P. 8(a) does not provide a separate basis for affirming the district court.

CONCLUSION

For the reasons stated above, we AFFIRM the dismissal of Kimes' claim against Judge Stone and REVERSE the district court's dismissal of Kimes' claims against the Attorney Defendants.

Each party is to bear its own costs.