**Stephan PARDI, Plaintiff–Appellant,**

v.

**KAISER FOUNDATION HOSPITALS, Defendant–Appellee.**

No. 02–16447.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 16, 2004.

Filed Nov. 15, 2004.

---

Ellen C. Dove, Sacramento, CA, for the plaintiff-appellant.

Thomas G. Martinchek, Seyfarth Shaw, San Francisco, CA, for the defendant-appellee.

Before: WALLACE and McKEOWN, Circuit Judges, and MOSKOWITZ, District Judge.*

MOSKOWITZ, District Judge.

Stephan Pardi appeals the district court's grant of summary judgment in favor of his former employer, Kaiser Foundation Hospitals ("Kaiser"), on four claims: (1) violation of the Americans with Disabilities Act ("ADA"); (2) intentional infliction of emotional distress; (3) interference with prospective economic advantage; and (4) breach of contract. The district court granted summary judgment for Kaiser on

* The Honorable Barry Ted Moskowitz, District Judge for the Southern District of California, sitting by designation.

all claims based on a settlement agreement and release (the "Settlement Agreement"), the California litigation privilege, and failure of proof of the state claims. We affirm the judgment on the claims of intentional infliction of emotional distress, interference with prospective economic advantage, and violation of the ADA with regard to pre-Settlement Agreement acts. However, we vacate the judgment as to the claims of breach of contract and violation of the ADA and remand these claims for trial.

## BACKGROUND

A. *Pardi's Employment and Termination*

Stephan Pardi, a licensed respiratory care practitioner, began working at Kaiser Medical Center in Oakland, California, on April 27, 1997. Pardi informed his employer that he suffers from depression, a disability under the ADA.

Between 1997 and 1999, Pardi initiated a number of grievances through his union, Service Employees International Union Local 250 ("the union"), and filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging, among other things, that the head of the respiratory care department at Kaiser refused to comply with the agreed upon accommodations for his disability. In August 1998, Pardi requested a transfer to another facility as an accommodation for his disability under the ADA. In response, Kaiser demanded that Pardi undergo a full psychiatric evaluation, a condition that Kaiser had never imposed on any other respiratory care practitioner requesting a routine transfer. Pardi was never transferred.

During the same 1997 to 1999 time period, physicians and patients made various complaints against Pardi alleging unprofessional conduct and inappropriate comments.

Pardi was placed on paid administrative leave of absence on April 12, 1999, and on unpaid investigatory suspension on June 17, 1999, while Kaiser conducted an internal investigation into allegations of improper patient care by Pardi.

On July 12, 1999, Kaiser terminated Pardi's employment. Janet Schade, Kaiser's Director of Nursing Operations, made the decision to terminate Pardi. She notified him by letter, setting forth six charges of misconduct as grounds for his termination. Two of the charges involved time discrepancies entered on patients' charts. The other four described complaints from physicians and patients.[1]

1. The charges were listed as follows in Schade's letter:
 1. Falsification of Medical Records. (April 6, 1999) You charted activities in a patient's Respiratory Care Chart Report and Ventilator Flow Sheet before you had reported to work.
 2. Falsification of Medical Records. (March 31, 1999) You charted in a patient's Respiratory Care Chart Report that you were unable to begin a 4:00 p.m. and a 7:30 p.m. treatment due to responding to a Code Blue, however there were no Code Blues to which you responded.
 3. Physician Complaint. (March 30, 1999) You made an inappropriate comment to the family of a patient regarding the patient's care and prognosis requiring the physician to meet with the family in order to alleviate their concerns.
 4. Physician Complaint. (March 27, 1999) You treated the wrong patient and then made inappropriate comments to the patient concerning her treatment and prescription requiring the physician to meet with the patient in order to assuage her anxiety and concerns.
 5. Physician Complaint. (January 25, 1999) You inappropriately instructed a physician how to treat a patient and when asked to leave the room you continued to make inappropriate comments.

Also in July 1999, a union arbitration panel heard multiple grievances brought by Pardi relating to discrimination and harassment. The arbitration concluded in Pardi's favor, resulting in a five-figure settlement from Kaiser. The record does not indicate exactly when in July the arbitration occurred or the panel rendered its decision.

After his termination, Pardi initiated an additional grievance proceeding against Kaiser through his union challenging his termination.

## B. Kaiser's Report to the Respiratory Care Board

On July 23, 1999, Schade reported Pardi's termination to the Respiratory Care Board ("RCB"), the regulatory body that oversees the practice of respiratory care in California. Schade stated that she believed that the report was mandated by California Business and Professions Code § 3758, which requires employers to report to the RCB any suspensions and terminations for cause of respiratory care practitioners, and punishes noncompliance with a fine of up to $10,000.[2] Schade

claims she believed that the two charges of entering false times on patients' charts fell within the provision for "falsification of medical records." This was the only basis for her report to the RCB.

Kaiser admits that it did not have a policy of reporting all terminations of respiratory care practitioners to the RCB. As of January 21, 2002, Pardi's termination was the only one that it had reported to the RCB since January 1, 1996.

## C. The Settlement Agreement

On or about January 13, 2000, Kaiser, Pardi, and the union entered into a Settlement Agreement and General Release ("Settlement Agreement"). Under the terms of the Settlement Agreement, Kaiser agreed to accept Pardi's resignation and pay Pardi $130,000. In exchange, Pardi agreed to withdraw pending complaints against Kaiser with the EEOC, and to release Kaiser from all claims for conduct up to the date of the agreement and any future claims arising from any event occurring on or before the date of the Settlement Agreement.[3] Pardi signed the

---

6. Member Complaint. (January 17, 1999) You made an inappropriate comment to a terminal patient.

2. California Business and Professions Code § 3758 provides:

(a) Any employer of a respiratory care practitioner shall report to the Respiratory Care Board the suspension or termination for cause of any practitioner in their employ .... (b) For purposes of the section, "suspension or termination for cause" is defined to mean ... termination from employment for any of the following reasons: ... (4) Falsification of medical records .... (c) Failure of an employer to make a report required by this section is punishable by an administrative fine not to exceed ten thousand dollars ($10,000) per violation.

3. The Settlement Agreement included the following pertinent provisions:

3. Kaiser will accept the voluntary resignation of PARDI, which will become effective seven (7) days following PARDI's signature to this Settlement Agreement.
....
6. PARDI represents and warrants that he will sign and return to Kaiser immediately the attached letter requesting his right to sue letter from the EEOC.... Kaiser shall then submit the fully signed attached letter to the EEOC.
....
8. This agreement covers and includes all claims that PARDI and Local 250 have against KAISER, whether known or unknown. ... PARDI and Local 250 understand this waiver and expressly agreed [sic] that this Settlement Agreement extends to all claims of whatever nature and kind, known or unknown, suspected or unsuspected, vested or contingent, past, present or future, arising from or attributable to

Settlement Agreement on January 13, 2000. Kaiser's representatives signed on January 17, 2000.

### D. Post–Settlement Acts

On January 25, 2000, approximately six months after Kaiser had reported Pardi's termination to the RCB and less than two weeks after Kaiser had settled with Pardi, Mark Bleeker, a Senior Investigator with the Department of Consumer Affairs ("DCA"), contacted Christopher Joyce of Kaiser's Human Resources Department. Bleeker advised Joyce that he was initiating an investigation on behalf of the RCB regarding allegations that Pardi had falsified medical records and acted unprofessionally. Bleeker requested access to employment files and patient records and sent investigative subpoenas to Joyce and Deborah Booker (now Deborah Shibley), an inhouse attorney for Kaiser, in an effort to obtain information about complaints against Pardi.

On February 1, 2000, Bleeker met with Joyce at Kaiser's Oakland Medical Center. Bleeker reviewed Pardi's employment file and requested copies of certain documents. As of February 1, 2000, Pardi's employment file had not been updated to reflect his resignation rather than his termination for cause. It was not until February 9 and 11, 2000, that Joyce directed Kaiser's document management center to remove termination paperwork from Pardi's personnel file and replace it with documents indicating that Pardi's employment with Kaiser had ended through voluntary resignation.

On April 5, 2000, Shibley sent a letter to Bleeker enclosing documents she stated were responsive to the subpoena, including complaints which were not part of the investigation leading to the decision to report Pardi's termination. There is evidence that Shibley did not turn over to Bleeker medical records that could have supported Pardi's explanation of the charges that allegedly formed the basis of his termination, or the name of at least one witness favorable to Pardi whom Pardi had identified in a June 21, 1999 letter he had written to Joyce. Kaiser also did not turn over to Bleeker letters Pardi had written to his supervisors at Kaiser regarding Kaiser's harassment and failure to accommodate his disability. One such letter was dated December 29, 1997, and was sent to Schade.

Shibley never informed Bleeker that Kaiser and Pardi had reached a settlement. It is unclear when Shibley informed Bleeker that Pardi's termination had been revised to reflect voluntary resignation.

As a result of the pending investigation, the RCB temporarily suspended Pardi's certification to practice. Eventually, after requiring Pardi to undergo a psychiatric evaluation, the RCB renewed Pardi's certificate.

Beginning in early 2000, Ellen Dove, Pardi's attorney, made numerous unsuc-

---

any incident or event, occurring, in whole or in part, on or before the date of PARDI'S execution of this Settlement Agreement. . . .

. . . .

9. PARDI does hereby forever release and discharge KAISER ... from any and all causes of action, judgments, liens, indebtedness, damages, losses, claims ... of whatsoever kind and character which he may individually now have or in the future may have against KAISER, arising out of his employ-

ment with KAISER prior to the date of his execution of this Settlement Agreement. This Settlement Agreement specifically covers, but is not limited to, any and all claims arising from PARDI'S employment with KAISER prior to the date of his execution of this Settlement Agreement, including but not limited to, individual claims under federal, state, or local laws prohibiting employment discrimination and any claim for attorneys' fees.

cessful attempts to obtain a letter from Shibley verifying that Pardi had been employed at Kaiser. Shibley told Dove not to contact any Kaiser employees seeking such information about Pardi.

Kaiser was similarly unresponsive to other inquiries about Pardi's employment. A prospective employer of Pardi, Dr. Calvin O'Kane, program director of the Multiple Sclerosis Society near Sacramento, California, called the new head of Kaiser's Oakland Respiratory Care Department on August 7, 2001, and the Human Resources Department on August 13, 2001, seeking information about Pardi. O'Kane never received return calls for the messages he left on both occasions. He wrote a letter addressed to Kaiser's Human Resources Department in October 2001 requesting information about Pardi. As of May 2002, he had received no reply. Without verification of Pardi's former employment, O'Kane was unwilling to offer him a position.

Kaiser contends that its personnel department had not received any inquiries, either by telephone or through correspondence, seeking employment verification about Pardi as of April 16, 2002.

## E. The District Court's Decision

The district court granted summary judgment to Kaiser on the ground that the Settlement Agreement bars Pardi's claims. The district court found that Kaiser's report to the RCB arose out of Pardi's employment with Kaiser and was therefore covered by the language of the Settlement Agreement. The district court rejected Pardi's argument that Kaiser's failure to inform him about the report to the RCB amounted to fraudulent misrepresentation, reasoning that: (1) Kaiser was obligated to make the report under California Business and Professions Code § 3758(b)(4); (2) Kaiser was not under any duty imposed by law or by the terms of the Settlement Agreement to have informed Pardi of the report; (3) Pardi was presumed to have known about the reporting requirement imposed by state law; and (4) Pardi cannot prove justifiable reliance.

The district court also concluded that Kaiser's report to the RCB and subsequent participation in the DCA's investigation were privileged under California Civil Code § 47(b), which establishes an absolute litigation privilege for communications made in the course of litigation. The district court noted that Pardi had failed to plead or request leave to amend his pleading to add a claim of malicious prosecution, the only derivative tort action for which § 47(b) does not operate as a defense. Concluding that such a claim would be futile due to the Settlement Agreement and its finding that Kaiser had probable cause to make the report to the RCB, the district court *sua sponte* denied Pardi leave to amend to add a claim of malicious prosecution.

The district court also determined that Pardi's ADA and intentional infliction of emotional distress claims were barred by the Settlement Agreement. While the court found that Dr. O'Kane would have hired Pardi had he received employment verification from Kaiser, it rejected Pardi's intentional interference with prospective economic advantage claim. The district court rejected Pardi's breach of contract claim based on the absence of any evidence that: (1) Kaiser had a duty to provide verification of employment, (2) Kaiser failed to convert Pardi's termination into a resignation, or (3) Kaiser was required under the Settlement Agreement to retract its report to the RCB. The district court rejected Pardi's claim of breach of the implied covenant of good faith and fair dealing as duplicative of the contract claim.

## DISCUSSION

### A. Standard of Review

A district court's grant of summary judgment is reviewed de novo. *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall,* 355 F.3d 1140, 1144 (9th Cir.2004). On appeal, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* Summary judgment may be affirmed on any ground supported by the record, even if not relied upon by the district court. *Id.*

### B. Contract Claims

#### 1. Enforceability of the Settlement Agreement

The district court was correct to find the Settlement Agreement enforceable against Pardi and we affirm the grant of summary judgment to Kaiser on Pardi's state law and ADA claims relating to the acts that took place prior to execution of that agreement.

■■■ Pardi failed to establish that the Settlement Agreement was procured by fraud, duress, failure of informed consent, or any other basis that would render it invalid. Pardi did not submit any evidence in support of his claims that Kaiser concealed facts that it had a duty to reveal, that he was induced to sign the agreement as a result of economic duress, or that he lacked informed consent because he had no lawyer and did not understand the agreement.[4] Thus, the district court did not err in upholding the Settlement Agreement

and granting summary judgment on the pre-settlement claims.

#### 2. Breach of Contract

■■■ The third paragraph of the Settlement Agreement provides that "Kaiser will accept the voluntary resignation of PARDI, which will become effective seven (7) days following PARDI's signature to this Settlement Agreement." Although Pardi signed the Settlement Agreement on January 13, 2000, Kaiser did not remove documents in Pardi's personnel file reflecting his termination until February 9, 2000, at the earliest.

It is unclear what the parties meant by the phrases "accept the voluntary resignation" and "become effective." Where contractual language is susceptible to more than one reasonable interpretation, summary judgment is ordinarily improper because "differing views of the intent of parties will raise genuine issues of material fact." *San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.,* 132 F.3d 1303, 1307 (9th Cir.1997). Construing all evidence in the light most favorable to the non-moving party, we must determine "whether the ambiguity could be resolved in a manner consistent with the non-moving party's claim." *Id.*

Pardi apparently agreed to the Settlement Agreement under a belief that by "accepting" his voluntary resignation, Kaiser would not make representations to third parties that Pardi had been terminated. We conclude that a trier of fact could reasonably find that the Settlement Agreement obligated Kaiser to remove all references to its prior termination of Pardi in his personnel record and change Pardi's

---

4. For the first time on appeal, Pardi raises duress and lack of informed consent as grounds upon which to find the Settlement Agreement unenforceable. "[P]arties cannot raise new issues on appeal to secure a reversal of the lower court's summary judgment determination." *Bankamerica Pension Plan v. McMath,* 206 F.3d 821, 825 (9th Cir.2000).

record to reflect a voluntary resignation by January 20, 2000.

■ A trier of fact could also reasonably conclude that by failing to take prompt steps to vacate the termination and enter Pardi's resignation, Kaiser's inaction resulted in an unfavorable determination by Bleeker, the DCA representative who visited Kaiser to examine Pardi's personnel file on February 1, 2000, when Pardi's file still contained documents indicating his termination for cause. On this record, a factfinder could determine that Kaiser deprived Pardi of a material benefit of the Settlement Agreement, and thus breached its obligation under the contract.

Because there remain material disputes of fact, we vacate the summary judgment on the breach of contract claim and remand for further proceedings. We agree with the district court that Pardi's claim for breach of the implied covenant of good faith and fair dealing essentially duplicates his breach of contract claim. Accordingly, we remand that claim for further proceedings as well.

## C. ADA Claims

Pardi alleges that Kaiser violated the ADA in two regards. First, Pardi asserts that Kaiser discriminated against him by maliciously reporting to the RCB a termination based on false charges. Pardi also contends that Kaiser retaliated against him by, inter alia, disclosing to the RCB other complaints against him unrelated to the termination, concealing from Pardi the report to the RCB during settlement negotiations, refusing to correct or retract the report to the RCB, and failing to disclose documents favorable to Pardi during the RCB's investigation.

Pardi's claims of retaliation relate to alleged acts by Kaiser both before and after the effective date of the Settlement Agreement. We agree with the district court that the terms of the agreement release Kaiser from liability for claims arising out of any acts of retaliation that occurred prior to its effective date. We must decide, however, whether any claims based on acts occurring after the agreement should have survived summary judgment.

The district court concluded that any conduct by Kaiser in connection with the investigation by the RCB triggered the protection of the "litigation privilege" under California state law, which immunizes certain communications from liability. See CAL. CIV. CODE § 47(b). We hold, however, that the state law litigation privilege does not bar Pardi's ADA claim for retaliation based on post-settlement conduct.

### 1. Prima facie case of ADA retaliation

■ The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two. Brown v. City of Tucson, 336 F.3d 1181, 1186–87 (9th Cir.2003). If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual. See Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir.2000).

■ Pardi has demonstrated a prima facie case. Pursuing one's rights under the ADA constitutes a protected activity. *See, e.g., McAlindin v. County of San Diego,* 192 F.3d 1226, 1238 (9th Cir.1999) (stating that "vigorously asserting [one's] rights" under the ADA and other state and federal discrimination laws constitutes protected activity); *Hashimoto v. Dalton,* 118 F.3d 671, 679–80 (9th Cir.1997) (determining that meeting with an Equal Employment Opportunity counselor to discuss sex and race discrimination constitutes protected activity). It is undisputed that Pardi lodged numerous union grievances and EEOC charges regarding Kaiser's failure to accommodate his disability. Pardi engaged in protected activities throughout the post-termination period, up to the date of the settlement. Indeed, it appears that the desire to halt the EEOC's investigations into Pardi's complaints motivated Kaiser to enter into the Settlement Agreement.

■ An adverse employment action is any action "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir.2000).[5] Here, Kaiser failed to: (1) promptly delete Pardi's termination for cause from its records, (2) inform the DCA investigator about the Settlement Agreement, (3) turn over to the investigator medical records that would tend to exculpate Pardi, and (4) turn over to the investigator evidence of Pardi's history of complaints against Kaiser. We conclude that Kaiser's acts are "reasonably likely to deter employees from engaging in protected activity" and amount to actionable retaliation under this Court's expansive view of adverse employment actions. *See Ray,* 217 F.3d at 1240–44.

■ When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred. *See Bell v. Clackamas County,* 341 F.3d 858, 865–66 (9th Cir.2003) (holding that proximity in time may by itself constitute circumstantial evidence of retaliation). Pardi made numerous complaints to the union, Kaiser's human resources department, and the EEOC about Kaiser's failure to accommodate his disability throughout 1997–1999. Pardi's complaints resulted in union grievance proceedings, including an arbitration in July 1999, and several EEOC investigations.

■ Some of Pardi's claims were pending at the time of the settlement negotiations in early January 2000. Soon thereafter, in early February, Kaiser failed to timely change Pardi's personnel file and made incomplete disclosures to Bleeker in connection with his investigation of Pardi. The temporal proximity between Pardi's protected activities and Kaiser's adverse acts sufficiently raises an inference of a causal link.

We conclude that Pardi has made a prima facie showing cognizable as a cause of action under the ADA. At the present stage of the litigation, Kaiser has not offered a "legitimate, non-retaliatory explanation for" its post-Settlement Agreement conduct, thus relieving Pardi from having "to show that [Kaiser]'s explanation is merely a pretext for impermissible retaliation." *Winarto v. Toshiba Am. Elecs. Components, Inc.,* 274 F.3d 1276, 1284 (9th Cir.2001). We must next consider whether the district court was correct to decide that Kaiser's report to the RCB and participation in the RCB's official investigation into Pardi's case were protected by the state litigation privilege. This ques-

**5.** While *Ray* addressed retaliation claims under Title VII, a retaliation claim under the ADA is analyzed under the same framework. *City of Tucson,* 336 F.3d at 1186–87.

tion requires us to determine whether a state litigation privilege may be raised as a defense to actions alleged to violate federal civil rights laws.

## 2. State Immunities and Federal Discrimination Statutes

It is well established that the Supremacy Clause of the United States Constitution grants Congress the power "to preempt state and local laws." Oxygenated Fuels Ass'n v. Davis, 331 F.3d 665, 667 (9th Cir.2003). "[S]tate law is pre-empted to the extent that it actually conflicts with federal law." Id. (quoting English v. Gen. Elec. Co., 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). Thus, "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" the federal interests must prevail. Id.

We have previously held that California's statutory litigation privilege does not apply to bar an action brought under 42 U.S.C. § 1983. See Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir.1996). In Kimes, plaintiff heirs brought an action pursuant to 42 U.S.C. § 1983, claiming that their former attorneys and a Superior Court judge deprived them of property without due process. The plaintiffs alleged that the defendants conspired to vacate a jury verdict and thereby deprive them of property from their father's estate. Id. at 1124–25. The attorneys asserted in response that the absolute litigation privilege of California Civil Code § 47(b) protected their communications in the probate litigation from tort liability. Id. at 1126–27. We held that the attorneys could not claim the protection of a state immunity statute to thwart the important federal protections guaranteed by the Constitution. We concluded that:

Conduct by persons ... which is wrongful under 42 U.S.C. § 1983 ... cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.

Kimes, 84 F.3d at 1127 (quoting Martinez v. California, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)); see also Sosa v. Hiraoka, 920 F.2d 1451, 1460 & n. 3 (9th Cir.1990) (holding that California laws conferring immunity on community college and its administrators for discretionary acts could not protect them from Title VII discrimination claims).

 We conclude that the same rationale applies to claims under the ADA. Our holding accords with the decision of the Seventh Circuit in Steffes v. Stepan Co., 144 F.3d 1070, 1074 (7th Cir.1998). Steffes held the district court erred when it applied a state litigation privilege to bar federal retaliation claims made pursuant to Title VII and the ADA, stating, "[A] state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action." Id.

 Consequently, we hold that Kaiser was not entitled to claim the protection of California Civil Code § 47(b) as a shield from liability for retaliatory acts committed after the settlement. We therefore vacate the judgment for Kaiser on Pardi's claim for post-Settlement Agreement retaliation and remand to the district court for further proceedings.

## D. Intentional Infliction of Emotional Distress

Although the Settlement Agreement barred Pardi's claim of intentional infliction of emotional distress to the extent it was based on prior acts, some actions Pardi alleges caused him emotional distress

occurred after the agreement. Specifically, Pardi contends that Kaiser failed to send the RCB a notice retracting his termination, subjected his professional license to risk of revocation, and caused Pardi to be subjected to a psychiatric evaluation. Pardi claims that Kaiser knew that he suffered from depression while engaging in this conduct.

■ We may affirm the district court on any grounds supported by the record. *United States ex rel. Ali*, 355 F.3d at 1144. A claim of intentional infliction of emotional distress requires a plaintiff to show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d 975, 983 (1979).

■ Pardi has failed to make a sufficient showing on the first prong, which requires a showing of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cochran v. Cochran*, 65 Cal. App.4th 488, 76 Cal.Rptr.2d 540, 545 (1998). Although Kaiser's acts may have amounted to unlawful retaliation, we must adhere to the California rule that "it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* (internal quotation marks and ellipsis omitted). Even viewed in the light most favorable to Pardi, Kaiser's behavior falls somewhere amidst the "rough edges of our society" and not outside of its borders. *Id.*

We therefore affirm the district court's summary judgment on this claim.

### E. *Intentional Interference with Prospective Economic Advantage*

■ To succeed on his intentional interference with prospective economic advantage claim, Pardi must demonstrate "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937, 950 (2003) (citations omitted). Pardi has failed to raise a genuine issue of material fact as to the first element, the "threshold causation requirement ... that it is reasonably *probable* that the lost economic advantage would have been realized but for [Kaiser's] interference." *Youst v. Longo*, 43 Cal.3d 64, 233 Cal.Rptr. 294, 729 P.2d 728, 733 (Cal.1987). The record indicates that Pardi was a job applicant with merely a " 'speculative expectation that a potentially beneficial relationship will arise.' " *Korea Supply Co.*, 131 Cal. Rptr.2d 29, 63 P.3d at 957 (quoting *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 49 Cal. Rptr.2d 793, 804 (Cal.Ct.App.1996)). It was not reasonably probable that he would have attained a position through Dr. O'Kane but for Kaiser's alleged refusal to return O'Kane's phone calls or otherwise verify Pardi's employment.

A jury presented with Dr. O'Kane's statements could only conclude that Pardi had made it no farther than the most

incipient stages of the job application process. Because the evidence does not support a finding that Dr. O'Kane would more likely than not have hired Pardi but for Kaiser's interference, we affirm the district court's grant of summary judgment to Kaiser on this claim. *Id.*

Finally, to the extent Pardi contests the denial of leave to amend to add a claim for malicious prosecution, we hold that the district court did not abuse its discretion. Such a claim would be futile given the general release in the Settlement Agreement.

We affirm the district court's grant of summary judgment on all claims except the claims for breach of the Settlement Agreement and the ADA claim for post-settlement retaliation. We vacate the summary judgment as to those claims only and remand to the district court for further proceedings.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED. EACH PARTY TO BEAR ITS OWN COSTS.**