**Dr. Robert F. STERNER, JR., individually and on behalf of other patients,**

v.

**UNITED STATES DRUG ENFORCEMENT AGENCY ("DEA"); et al., Defendants.**

**Civil No. 05CV0196 JAH (POR).**

United States District Court, S.D. California.

Oct. 11, 2006.

---

William A. Cohan, Law Offices of William Cohan, San Diego, CA, for Plaintiff.

Richard Tolles, United States Department of Justice, Office of the U.S. Attorney, Attorney General, State of California Office of the Attorney General, San Diego, CA, Henry C. Darmstadter, U.S. Department of Justice, Trial Attorney Tax Division, Washington, DC, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TOUSSAINT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

HOUSTON, District Judge.

## INTRODUCTION

Now before the Court is Defendant Darline M. Toussaint's ("Toussaint") motion to dismiss, or in the alternative, motion for summary judgment. Doc. No. 63. This Court, after careful consideration of the pleadings and relevant exhibits, GRANTS IN PART and DENIES IN PART Defendant Toussaint's motion to dismiss, or in the alternative motion for summary judgment.

## BACKGROUND

### I. Factual Background

Plaintiff Robert Sterner ("Plaintiff") is a licensed physician practicing medicine in the State of California since 1984. Plaintiff maintains two medical offices in El Cajon and San Diego. In 2001, Dr. Sterner began to issue recommendations for medical marijuana to some of his patients. Plaintiff is the former employer of Defendants Carew, Herrick and Stafford. Defendant Stafford left her office manager position in March 2003. Defendants Carew and Herrick were terminated in May 2003.

On or about May 23, 2003, Defendant Carew approached Defendant Brasich, a DEA agent, with information regarding Plaintiff's income and the reporting of his finances. Based on this information, Defendant Brasich drafted a report recommending investigation of Plaintiff. Brasich forwarded this report to Defendant State Medical Board on June 16, 2003. Brasich also approached Defendant Toussaint to commence an Internal Revenue Service ("IRS") investigation of Plaintiff.

On or about August 8, 2003, Defendant Stillwell and three other Medical Board investigators interviewed Plaintiff at his medical office in El Cajon. Plaintiff met with the investigators and answered their questions. Plaintiff also allowed them to examine the office, as well as his drug

dispensing records and invoices. According to Plaintiff, the investigators found nothing to raise concerns over his practice, nor had any patient filed a complaint of malpractice, mistreatment or other complaint. On August 26, 2003, Defendant Stillwell served an investigational subpoena ordering Plaintiff to appear and testify before Defendants Stillwell and Kennedy. Plaintiff, with counsel, met with the Defendants on November 14, 2003.

On November 20, 2003, the IRS and Defendant IRS Special Agent Darline Toussaint sought, and received, five separate search warrants to search Plaintiff's medical offices, home, storage facilities and safe deposit box. The IRS and Defendant Toussaint searched these locations on November 24, 2003. The IRS seized, in addition to business and tax records authorized by the warrant, records and treatment histories for each of Plaintiff's patients. On July 28, 2004, the federal grand jury's investigation of Plaintiff ended with no criminal charges filed.

Approximately one year after Plaintiff met with Defendants Stillwell and Kennedy of the State Medical Board, the Medical Board filed a petition on December 2, 2004, for an order to compel psychiatric examination of Plaintiff, as well as submit to blood and urine tests.

## II. Procedural History

Plaintiff individually, and on behalf of his patients (collectively "Plaintiffs"), filed the instant complaint on February 1, 2005. The Honorable Jeffrey T. Miller extended the answer deadline for federal defendants on March 15 and April 5, 2005. See Doc. Nos. 15 and 18. Plaintiffs and Defendants Tamelah Carew, David Herrick, Kristin Stafford, the Medical Board of California, Dave Thornton, Patricia Stillwell, Nancy M. Edwards, Mark A. Kalish, M.D., Joseph F. Kennedy, M.D. and Ronald L. Moy, M.D. (collectively "State Defendants") also stipulated to Plaintiffs not seeking a default judgment within thirty days of service of the complaint. See Doc. No. 19.

On May 5, 2005, Defendant Toussaint, joined by the DEA, moved to disclose the grand jury material in Plaintiff's investigation. See Doc. Nos. 22 and 24. Plaintiff filed a response on May 23, 2005. Doc. No. 28. Defendant Toussaint filed a reply on June 1, 2005. Plaintiff subsequently filed a motion for protective order, and for leave to file pleadings and documents under seal on June 21, 2005. See Doc. No. 37. Defendants DEA and Toussaint, joined by State Defendants, filed a response on July 12, July 18, and July 26, 2005, respectively. See Doc. Nos. 36, 38 and 41. The motions to disclose grand jury material and for protective order were heard by Magistrate Judge Battaglia on July 29, 2005. See Doc. No. 47. Judge Battaglia granted Defendants' motion for disclosure of grand jury material and Plaintiffs' motion for protective order. Id. Judge Battaglia also granted Defendant DEA's motion for extension of time to respond to the complaint. Id.

State Defendants filed a motion to dismiss on May 12, 2005. Doc. No. 25. Plaintiffs filed an opposition on June 16, 2005. Doc. No. 33. State Defendants filed a reply on July 11, 2005. Doc. No. 35. This case was transferred to this Court on July 27, 2005. Doc. No. 44. On September 29, 2005, the motion was taken under submission without an oral hearing pursuant to Civ. LR 7.1(d.1). See Doc. No. 58. The Court issued an Order denying State Defendants' motion to dismiss based on standing, denying State Defendant's motion to dismiss prospective injunctive relief and against individuals in their personal capacity; denying Defendants Carew, Stafford and Herrick's mo-

tion to dismiss, denying Defendants Stillwell and Edwards' motion to dismiss, granting Defendants Thornton, Moy, Kalish and Kennedy's motion to dismiss and granting Defendant State of California's motion to dismiss against individuals in their individual capacity. *See* Doc. No. 75.

On November 7, 2005, Defendants DEA and Brasich filed a motion to dismiss, or in the alternative, for summary judgment. Doc. No. 60. On November 9, 2005, Defendant Toussaint filed a separate motion to dismiss and motion for summary judgment. *See* Doc. No. 64. Plaintiff filed separate oppositions to the motions on December 5, 2005. Doc. Nos. 68 and 69. Federal Defendants filed separate replies on February 2, 2006. Doc. Nos. 79 and 81. On March 30, 2006, the Court took these matters under submission pursuant to CivLR7.1(d.1).

## *DISCUSSION*

### I. Legal Standard

#### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under this Rule is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Navarro,* 250 F.3d at 732. Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984); *see also Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson,* 749 F.2d at 534. However, motions to dismiss are generally disfavored and rarely granted. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). However, legal conclusions cast in the form of factual allegations need not be taken as true. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1200 (9th Cir.2003); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

#### B. Motion for Summary Judgment

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan,* 497 U.S. at 885, 110 S.Ct. 3177 (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See Schneider v. TRW, Inc.,* 938 F.2d 986, 990–91 (9th Cir.1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Mat-* *sushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## C. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806; *Johnson v. County of Los Angeles,* 340 F.3d 787, 791 (9th Cir.2003) (noting that because qualified immunity is " 'an entitlement not to stand trial' ... courts, not juries, [must] settle the ultimate questions of qualified immunity."). Thus, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).[1]

---

1. "[Q]uite aside from the special concerns regarding the need for early resolution of matters concerning immunity, litigants are ordinarily entitled to resolution of their summary judgment motions through a determination whether there are material facts in

In *Katz,* the Court set forth a threshold question when analyzing qualified immunity eligibility in a suit: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151, citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

█ Even if a constitutional violation were found, plaintiffs must still meet the additional hurdle of finding "whether the right was clearly established." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. The Supreme Court found that this second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* Thus, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.,* citing *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("[A]s [ ] explained in *Anderson,* the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established"). "If the law did not put the officer on notice that his conduct would be clearly unlawful,

dispute regarding the elements necessary to establish liability." *Paine v. City of Lompoc,*

summary judgment based on qualified immunity is appropriate." *Id.* at 195, 121 S.Ct. 2151; *see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")).

## II. Analysis

Defendant Toussaint moves to dismiss this case based on: 1) lack of standing to assert claims on behalf of his patients; 2) claims for injunctive relief are explicitly barred by the Anti–Injunction Act; 3) Plaintiff's First Amendment claim cannot be based upon a retaliatory tax investigation and 4) the complaint fails to adequately allege Toussaint's personal engagement in the alleged conspiracy. Defendant Toussaint also moves for summary judgment based on: 1) the search warrants fully complied with Fourth Amendment requirements; and 2) Toussaint is entitled to qualified immunity, barring damages. *See* Doc. No. 64.

### A. *Standing*

Defendant Toussaint claims that Plaintiff "lacks standing to assert the rights of unnamed individuals who are not parties to this action." Doc. No. 64 at 4. Plaintiff rebuts that he "has standing to seek an injunction on behalf of his patients to protect their anonymity." Doc. No. 68 at 3. Plaintiff points out: 1) his patients "have suffered an 'injury in fact' as a result of the unlawful seizure of their medical records"; 2) Plaintiff has a close relationship with his patients; and 3) the confidential nature of the doctor:patient relationship "would 'likely be diluted or adversely affected' if they cannot be asserted by

265 F.3d 975, 984 (9th Cir.2001) (citation omitted).

[Plaintiff]." *Id.* at 3–4, citing *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir.1997).

▮ A federal court's judicial power is limited to "cases" or "controversies." U.S. Const., Art. III § 2. A necessary element of Article III's "case" or "controversy" requirement is that a litigant must have " 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1152 (9th Cir.2000). The "irreducible constitutional minimum" of Article III standing has three elements. *LSO*, 205 F.3d at 1152 (internal quotations omitted). First, plaintiff must have suffered "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotations omitted). Second, plaintiff must show a causal connection between the injury and the conduct complained of; i.e., "the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)) (alterations in original). Third, it must be "likely," and not merely "speculative," that the plaintiff's injury will be redressed by a favorable decision. *Id.* at 561, 112 S.Ct. 2130.

▮ The court's standing analysis, however, does not end here. The court can also impose "prudential limitations" on the class of persons seeking federal jurisdiction, including requiring that a litigant can only assert his own legal rights, and not the rights of a third party. *See, e.g., United States v. Raines*, 362 U.S. 17, 22–23, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir.1996). "This rule flows from a concern that third parties will not adequately represent the individuals whose rights they seek to vindicate." *Retired Chicago Police Ass'n*, 76 F.3d at 862. Thus, in determining whether a party can assert a cause of action on behalf of others, a reviewing court must ask two questions: 1) whether the litigants have suffered an injury in fact sufficient to rise to an Article III controversy; and 2) whether, as a prudential matter, the plaintiff properly represents the interest of any other individual in the complaint. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n. 3, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

The complaint lists several allegations resulting from the seizure of Plaintiff Sterner's patient treatment history records. Cplt. at 16. Plaintiff Sterner alleges that, in violation of the search warrant, Defendant Toussaint seized entire patient files even when the medical files could be easily separated from payment records. *Id.* The complaint seeks injunctive relief barring Defendants from use or dissemination of "any patient information and/or patient identities" for violating Plaintiffs' first amendment rights (*see* Cplt. at 15), as well as "Plaintiff Sterner's patients clearly established right to privacy." *See* Cplt. at 21.

▮ Plaintiff argues that the physician-patient privilege endows him with standing to pursue this action on behalf of his patients. Doc. No. 33 at 3. Although federal law does not recognize a physician-patient privilege, *see Hutton v. Martinez*, 219 F.R.D. 164, 166 (N.D.Cal.2003), courts have consistently acknowledged the right

of a physician, as a custodian of records, to assert the privacy rights of his patients. In *In re Search Warrant*, 810 F.2d 67(3d Cir.1987), physician plaintiff sought to assert his patient's rights to privacy when medical records were seized from his office pursuant to a search warrant issued as part of an insurance fraud investigation. *Id.* at 70. In finding a physician has standing to assert the privacy rights of his patients, the court first recognized that " '[a] s a practical matter, the absence of notice ... of the subpoena means that no other person other than [the movant] would be likely to raise the privacy claim,' " and therefore the physician would be the "proper proponent to assert this claim on behalf of his patients." *Id.* at 71, quoting *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 (3d Cir. 1980). The court also found, due to a substantial stake a physician has in the outcome, the level of adverseness high enough to overcome any prudential concerns. *Id.* at 71 n. 3. In *Pagano v. Oroville Hospital*, 145 F.R.D. 683 (E.D.Cal. 1993) (overturned on other grounds), the court also recognized a physician's duty, as custodians of their patients' medical records, to assert the privacy rights of their patients. *Id.* at 696. Citing several California state cases, the court found that physicians "must be permitted to speak" for their absent patients where a physician's rights are coincident with their patients. *Id.,* citing *Wood v. Superior Court (Bd. of Medical Qual.)*, 166 Cal.App.3d 1138, 1145, 212 Cal.Rptr. 811 (1985). This Court finds these cases persuasive, and therefore finds that a physician, as a custodian of his patient's records, has standing

to assert privacy rights on behalf of his patients. Taking the facts asserted here as true, the information Plaintiffs seek to protect is highly personal and, in light of the Government's primary interest in financial matters and accounting, should outweigh any interest that the Government may have. Accordingly, this Court DENIES Defendant Toussaint's motion to dismiss based on the alleged lack of standing of Plaintiff to assert claims on behalf of his patients.

## B. *Anti–Injunction Act* [2]

Defendant Toussaint next states that Plaintiff's claim for injunctive relief is barred by the Anti–Injunction Act (Internal Revenue Code, 26 USC § 7421). Doc. No. 64. at 6. Defendant cites to numerous cases, stating that the "courts have interpreted the Anti–Injunction Act broadly so as to encompass not only the assessment and collection of taxes, but also activities which are intended to or may culminate in the assessment or collection of taxes." *Id.* at 7. Defendant further states that although several exceptions to this Act exists, none of the exceptions apply to the instant matter. *Id.* at 8. Plaintiff argues that the Anti–Injunction Act does not apply because Defendant Toussaint acted in bad faith in procuring the search warrant against his premises. Doc. No. 68 at 4. Moreover, Plaintiff argues that the Government cannot prevail on the merits of obtaining tax violation charges. *Id.* at 5. Finally, Plaintiff points out that he is not seeking an injunction prohibiting a legitimate tax investigation—rather, Plaintiff is seeking a legitimate injunction under *Conant v. Walters,* 309 F.3d 629 (9th Cir.

---

**2.** Defendant Toussaint also states that "any constitutionally based claim by [Plaintiff] for damages or injunctive relief against the IRS or any other federal agency would generally be barred by the doctrine of sovereign immunity." Doc. No. 64. This Court dismisses

any argument by Defendant Toussaint directed against governmental agencies because Plaintiff does not bring a claim against Defendant Toussaint's organizational employer, the IRS.

2002), to: 1) enjoin a sham tax investigation; 2) to destroy copies of information seized from Plaintiff's businesses and residence, including patient medical reports. *Id.* at 6. In his complaint, Plaintiff seeks the entry of a preliminary injunction:

> [P]rohibiting Defendants from: a) conducting any further searches and seizures, "investigations," or otherwise seeking or acquiring additional information regarding Dr. Sterner and any of his patients; and b) any use or dissemination to any person, entity or agency whatsoever of any patient information and/or patient identities or information already obtained during the searches and seizures and "investigations" described hereinabove—including the fruits derived therefrom—until and unless this court determines that these searches and seizures and "investigations" were lawful and the defendants or any of them have demonstrated a cogent and compelling need for the patients' treatment records to overcome the patients' right to privacy.

Cptl. at 21–22. In addition, Plaintiff seeks a permanent injunction:

> a) ordering all Defendants to return all such items and information as well as the destruction and elimination of all such information no matter where or how maintained by the defendants or any of defendants' agents and agencies; and b) prohibiting any further searches for the identities of or confidential communication between Dr. Sterner and any of his patients.

Cplt. at 22.

█ 26 U.S.C. § 7421 reads in relevant part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . ." 26 U.S.C. § 7421(a) (West 2005). The Act seeks to efficiently collect taxes "with a minimum of preenforcement judicial interference, [while protecting] the collector from litigation pending a refund suit." *United States v. American Friends Serv. Comm.*, 419 U.S. 7, 12, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974). Injunctive relief may be granted where "there has been an illegal or unconstitutional levy, coupled with other special and extraordinary circumstances which would require equity to intervene." *Lassoff v. Gray*, 266 F.2d 745, 747 (6th Cir.1959). In *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Supreme Court established a judicial exception to the Act, holding that "an injunction may be obtained against the collection of any tax if (1) it is clear that under no circumstances could the government ultimately prevail"; and 2) " 'equity jurisdiction' otherwise exists, i.e., the taxpayer shows that he would otherwise suffer irreparable injury." *Id.* at 7. Certainty of success on the merits is assessed "under the most liberal view of the law and the facts" available to the Government at the time of the suit. *Id.* Courts have interpreted the Anti–Injunction Act broadly, applying it not only to the assessment and collection of taxes, but also to activities that may culminate in the assessment or collection of axes. *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 405 (4th Cir.2003).

Plaintiff states the judicial exception to the Injunction Act is met here because the government cannot prevail on the merits of its claim, and because Plaintiffs would suffer irreparable harm. Plaintiff cites to: 1) the grand jury's refusal to indict Plaintiff for alleged tax violations resulting from Defendant Toussaint's investigation; and 2) Plaintiff has not received an audit notice from the IRS. Doc. No. 68 at 5. Furthermore, Plaintiff reiterates that his prayer for injunctive relief stems from the conspiracy between Federal Defendants, wherein the search warrants contained

material false statements and omits material facts that would negate any probable cause basis for receiving the necessary search warrants. *Id.*

■ It is clear from case precedent that the Anti–Injunction Act is broadly interpreted, reaching to acts by the IRS and its agents that may culminate in the assessment or collection of taxes, as is the case here. However, the cases cited by the parties require that the Government show that the "primary purpose of [the] lawsuit is to prevent the Service from assessing and collecting income taxes." *See Bob Jones Univ.,* 416 U.S. at 738, 94 S.Ct. 2038. For example, in *Judicial Watch,* the appeals court recognized that a lawsuit to block an IRS audit of a taxexempt § 501(c)(3) organization "fits squarely within the category of activities that may culminate in the assessment or collection of taxes." 317 F.3d at 405. Similarly, in *Kemlon Products & Dev. Co. v. United States,* 638 F.2d 1315 (5th Cir.1981) and *United States v. Dema,* 544 F.2d 1373 (7th Cir.1976), the courts applied the Anti–Injunction Act where plaintiffs sought to enjoin the agency from gathering information directly related to the collection and assessment of taxes. *See Kemlon,* 638 F.2d at 1318 (IRS seeking customer input to assess correct patent valuation for tax liability purposes); *Dema,* 544 F.2d at 1376 (IRS seeking review of business records to assess correct tax liability). Here, Plaintiff seeks in part injunctive relief against the: "(1)(b) use or dissemination to any person, entity or agency whatsoever of any patient information and/or patient identities or information already obtained ..." and "(2)(b) prohibiting any further searches for the identities of or confiden-

tial communication between Dr. Sterner and any of his patients ..." Cplt. at 21–22. It is clear from Toussaint's declaration, which Plaintiff does not dispute, that a sample review of Plaintiff's patient files revealed that "payment records for each patient were interspersed throughout the file and were thoroughly co-mingled with other patient records including personal information and treatment history" and "[i]n many files, the payment and treatment history were stapled or fastened together." Doc. No. 67 at 15. The records keeping practices, by necessity, requires review of patient information and/or patient identities in order to ascertain an assessment or collection of tax. Therefore, to the extent that Defendant Toussaint seeks to apply the Anti–Injunction Act to injunctive relief related to any civil or criminal investigation concerning collection and assessment of taxes, Defendant Toussaint's argument is persuasive and this Court GRANTS Defendant's motion. However, to the extent Plaintiff seeks to enjoin the use or dissemination of patient information and/or identities to other entities or agencies for any purpose unrelated to any civil or criminal investigation concerning the collection and assessment of taxes, this Court DENIES Defendant's motion to dismiss.[3]

Plaintiff also requests injunctive relief to prohibit all defendants from "(a) conducting any further searches and seizures, ... or otherwise seeking or acquiring additional information regarding [Plaintiff] and any of his patients" and "(2)(a) ordering all Defendants to return all such items and information as well as the destruction and elimination of all such information no matter where or how maintained by the defen-

---

**3.** The Court notes that Defendant Toussaint only argues against the injunction of any investigation pertaining to Plaintiff's tax liabilities pursuant to the Anti–Injunction Act, and

does not assert any arguments regarding the ability to disseminate information to other government agencies.

dants or any of defendants' agents and agencies." Cplt. at 21–22. Plaintiff alleges that the Court should enjoin Defendants because under *Conant,* the IRS or its agents cannot, under the pretext of a "sham investigation," circumvent the injunction put into place by the Ninth Circuit that allows Plaintiff to exercise his free speech rights under the First Amendment. Doc. No. 68 at 3. Plaintiff alleges moreover that Defendant Toussaint's efforts were made in bad faith, and therefore the Anti–Injunction should not apply. *Id.* Defendant Toussaint rebuts Plaintiff's allegations, pointing out that the Anti–Injunction Act applies "so long as [the IRS's actions represent] a good faith effort to enforce the technical requirements of the tax laws." Doc. No. 64 at 6.

In *Bob Jones Univ. v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the Supreme Court looked at the issue of whether alleged bad faith motives in revoking the university's tax-exempt status "was outside [the IRS's] lawful authority," making the Anti–Injunction Act inapplicable to plaintiff's suit. *Id.* at 740, 94 S.Ct. 2038. The Court rejected plaintiff's contentions, finding no evidence that the service's "position does not represent a good-faith effort to enforce the technical requirements of the tax laws." *Id., see also Judicial Watch,* 317 F.3d at 406 (allegations of "bad-faith, non-tax related motives ... do not render the Anti–Injunction Act inapplicable."). The Court recognized, therefore, that although there may be allegations of a bad-faith motive for the IRS's actions, in the absence of evidence that some of the service's actions was not within the purview of the agency, the Anti–Injunction Act prevails.

Taking the factual allegations as true in a motion to dismiss, and looking at the evidence in the instant matter in the light most favorable to Plaintiff, the non-moving party, this Court finds that Plaintiff's suit comes under the purview of the Anti–Injunction Act. Although the complaint does allege that the IRS and Defendant Toussaint's efforts were made in bad faith, Plaintiff does not show that the IRS's investigations did not "represent a good-faith effort to enforce the technical requirements of the tax laws." *See Bob Jones Univ.,* 416 U.S. at 740, 94 S.Ct. 2038. Plaintiff only states in the complaint that Defendant Brasich allegedly "encouraged Toussaint to commence an Internal Revenue Service Criminal Investigation" against Plaintiff, and concludes that the search warrants were "unlawfully and unreasonably executed." Cplt. at 4, 17. In the absence of the judicial exception applying in the instant matter, therefore, the Anti–Injunction Act may bar Plaintiff's injunctive claims.

Plaintiff also argues that the judicial exception to the Anti–Injunction Act applies. Taking the factual allegations and evidence "under the most liberal view of the law and the facts," this Court finds that Plaintiff fails to meet his burden of showing that the Government could not prevail on the merits of its actions. Plaintiff does not state that an IRS action would not succeed on its merits, only that the grand jury's actions and the failure of the IRS to provide an audit notification suggests that the government could not prevail in the instant matter. *See* Doc. No. 68 at 5. Importantly, Plaintiff does not dispute the application of the Anti–Injunction Act to a "legitimate tax investigation," but instead argues conclusorily that any "sham tax investigation to circumvent the *Conant* permanent injunction" can be enjoined. *Id.* at 6. Such an allegation cannot eliminate the application of the Anti–Injunction Act where the IRS's actions reflect "a good faith effort to enforce the technical

requirements of the tax laws." [4] *See Bob Jones Univ.*, 416 U.S. at 740, 94 S.Ct. 2038. Because Plaintiff cannot show that the IRS could not prevail on the merits of its case, therefore, this Court finds that the exception to the Anti–Injunction Act does not apply.

Accordingly, for the reasons stated above, this Court GRANTS IN PART and DENIES IN PART Defendant Toussaint's motion to dismiss Plaintiff's injunctive relief claim under the Anti–Injunction Act. To the extent that Plaintiff's claims for injunctive relief request the enjoining of the use or dissemination of confidential patient information in investigations that are unrelated to the assessment or collection of taxes, Defendant's motion is DENIED. To the extent that Plaintiff's claims for injunctive relief are related to the assessment and collection of taxes, the Anti–Injunction Act barring Plaintiff's claims for injunctive relief does apply, and Defendant's motion to dismiss is GRANTED.

### C. *Sufficiency of Complaint*

Defendant Toussaint next claims that Plaintiff's First Amendment claim should be dismissed for lack of allegations in the complaint. Doc. No. 64 at 10. Defendant notes that the complaint "contains very few specific factual allegations against Toussaint," rendering the complaint insufficient. *Id.* at 11.

Rule 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). The Federal Rules adopt a flexible pleading policy; however every complaint must, at a minimum, give fair notice and state the elements of each claim against each defendant plainly and succinctly. *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir.1984); *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir.1996). In light of the lenient pleading standards under Fed. R.Civ.P. 8(a), this Court finds that the complaint sufficiently gives fair notice to Defendant and pleads a First Amendment Claim. Fed.R.Civ.P. 8(a)(2); *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir.1984); *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir.1996). Plaintiff alleges in the complaint that the "Department of the Treasury ... provid[ed] false and misleading information to be included in search warrant affidavits and ... by seeking, obtaining, and executing search warrants—all in San Diego County, California—using unreasonably excessive force, searching for and seizing items which were neither fruits, evidence nor instrumentalities of any crime and for seizure of which no probable cause existed ..." Cplt. at 2. Moreover, Plaintiff alleges that Defendant Toussaint "unlawfully and unreasonably executed the aforesaid search warrants and illegally seized Plaintiff Sterner's and his patients' complete patient files and personal property without probable cause or any reasonable basis ... pursuant to the [implementation of the Federal Marijuana Policy] to retaliate against and injure Plaintiff Sterner and his patients ..." Cplt. at 4. The complaint, therefore, appears to sufficiently support an allegation of First Amendment violations by Defendant Toussaint. Accordingly, Defendant Toussaint's motion to dismiss Plaintiff's First Amendment claim is DENIED.

### D. *Qualified Immunity*

Defendant Toussaint argues that she is shielded from any liability because she is entitled to qualified immunity, and therefore seeks summary adjudication of Plain-

---

**4.** *See* discussion under "Qualified Immunity", *infra.*

tiff's *Bivens* action on the basis of immunity.

The first inquiry for the Court under *Saucier,* is "whether a constitutional right would have been violated on the facts alleged." 533 U.S. at 200, 121 S.Ct. 2151. In his complaint, Plaintiff alleges First and Fourth Amendment violations, in particular Defendant Toussaint's unlawful retaliation contrary to *Conant,* and the unreasonable and unlawful seizure of medical records and Plaintiff himself in violation of his Fourth Amendment rights. *See* Cplt. at 2, 4, 8, 11 and 13.

### 1. *Fourth Amendment*

#### a. *Probable Cause*

Toussaint asserts that she had probable cause to pursue a search warrant to search Plaintiff's business and residence based on her investigation of Plaintiff's bank records and income tax returns, as well as interviews conducted with three of Plaintiff's former employees.[5] Toussaint points out that the affidavit contains specific factual details regarding Plaintiff's "skimming" of cash provided by Plaintiff's former employees, as well as substantiation of the claims through examination of Plaintiff's bank records and tax returns. Doc. No. 64 at 15–16. Defendant concludes that "there was a substantial basis for the issuing magistrate to believe that Sterner's [sic] had intentionally underreported his income." *Id.* at 16. Plaintiff rebuts that qualified immunity does not attach because Toussaint "lacked an objectively reasonable basis to believe probable cause exist[ed]." Doc. No. 68 at 10.

In *Hervey v. Estes,* 65 F.3d 784 (9th Cir.1995), the Ninth Circuit established a two-part test for analyzing an allegation of judicial deception in probable cause determinations. *Id.* at 788. Plaintiff Hervey brought a 42 U.S.C. § 1983 claim against a federal officer, alleging that defendant officer procured a warrant through the use of false and misleading statements. *Id.* The Ninth Circuit, citing to their decision in *Branch v. Tunnell,* 937 F.2d 1382 (9th Cir.1991), stated the test as "if an officer 'submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, ... he cannot be said to have acted in an objectively reasonable manner,' and the shield of qualified immunity is lost." *Hervey,* 65 F.3d at 788, quoting *Branch,* 937 F.2d at 1387. The court pointed out that plaintiff must also overcome a heightened pleading standard "establish[ing] that the defendant knowingly or recklessly misled the magistrate [judge]." *Hervey,* 65 F.3d at 788. Finally, "a plaintiff can only survive summary judgment on a defense claim of qualified immunity if the plaintiff can *both* establish a substantial showing of a deliberate falsehood or reckless disregard and establish that, without the dishonestly included or omitted information, the magistrate [judge] would not have issued the warrant." *Id.* at 789 (emphasis in original).

Plaintiff first argues that Toussaint presented misleading information to the magistrate judge in the form of a table in the affidavit summarizing Plaintiff's reported taxes and income. Plaintiff states that the table "is misleading because it induces one to erroneously believe that Sterner paid" less than half the amount of taxes actually reported on his tax returns, "thus provid-

---

5. The former employees, Tamelah Carew, David Herrick and Kristin Stafford are also named defendants in this action.

ing probable cause to believe that Dr. Sterner was filing false income tax returns and committing tax evasion." Doc. No. 68 at 12–14. Plaintiff summarizes that Toussaint's "most glaring misrepresentation among the 'tabulated' omissions" is that she reported Plaintiff's taxes paid as only $11,966, rather than the $68,940 amount that should have been reported, a difference of more than 550%. *Id.* at 16.

Plaintiff also details omissions in Toussaint's reporting of Plaintiff's "Schedule C–Table," which lists reported gross receipts, total expenses and net profit or loss. Doc. No. 68 at 16. Plaintiff points out that Toussaint omits a key component, "cost of goods sold." By doing this, Plaintiff alleges that the Schedule–C table is misleading "because it creates an apparent discrepancy between Reported Gross Receipts less total expenses and the figure for net profit or (loss)." *Id.* Moreover, Plaintiff alleges that Toussaint used the wrong formula for calculating net profit. *Id.* at 17. Plaintiff states that the correct formula for net profit should be gross income, not reported gross receipts, minus total expenses. *Id.* at 17–18. By using reported gross receipts instead of gross income, Plaintiff alleges that Toussaint exaggerated the net profit amounts, giving the impression that Plaintiff "failed to report and pay taxes on income of $276,-204—the total cost of goods sold she deliberately omitted." *Id.* at 18.

Plaintiff also points out that Toussaint failed to include information that would have negated probable cause in the instant matter. For example, Plaintiff alleges that Toussaint failed to inform the magistrate judge that Plaintiff, as a sole proprietor, had no duty to report cash sales, and therefore did not have to deposit cash received from his business into a bank account immediately. In addition, Toussaint "should have known" that the eyewit-

ness account of "T.C.," a former employee, was not credible because she started to work at Plaintiff's business six weeks after tax information for 2002 was facsimiled to his accountant, she did not have duties involving bookkeeping or accounting, and therefore she did not have sufficient knowledge of Plaintiff's financial state or practice. *Id.* at 20. Plaintiff contends that the affidavit contains repeated statements from "T.C.", but none from K.S., another former employee of Plaintiff whose duties "did include bookkeeping and accounting." *Id.* Plaintiff also alleges that Toussaint failed to include "material facts in the public records required to prevent [Toussaint's] statements from being false and misleading." *Id.* at 22. These alleged material facts include credit card records, mortgage records, home equity lines of credit and personal loans. *Id.* at 22–23. Plaintiff concludes that "Toussaint deliberately omitted the fact that credit card cash advances, rental income and loan proceeds deposited in Sterner's business and personal bank accounts to falsely induce the conclusions that she had corroborated claims attributed to the Informant." *Id.* at 26.

In her reply, Toussaint points out that the information contained in the warrant affidavit should be viewed by the "totality of circumstances" test set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Toussaint addresses point for point each of Plaintiff's factual contentions, rebutting each as not being relevant or as being incorrect. *See* Doc. 81 at 10–22. In addition, Toussaint in a footnote states in her reply that the declaration detailing alleged inaccuracies in the warrant affidavits is made by "apparently a legal assistant or paralegal employed by Sterner's counsel, William Cohan." Doc. No. 81 at 12, fn. 9. Defendant asserts that the declaration of the legal assistant or paralegal of Plaintiff's counsel does not

contain admissible evidence because the declarant, Gabriel Cohan, lacks personal knowledge of the facts, and is not "competent to testify to the matters stated therein." Doc. No. 81 at 12 fn 9. Moreover, Defendant asserts that the declarant "is not sufficiently qualified to provide expert opinion in a tax fraud investigation and his unsupported opinions and conclusions provide no real assistance to the trier of fact." Toussaint "moves that the declaration of Gabriel Cohan be entirely stricken from consideration in connection with this motion." *Id.*

■ In a summary judgment motion, a court is limited under the federal rules to considering only admissible evidence. *See* Fed.R.Civ.P. 56(e); *Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1335 n. 9 (9th Cir.1980). Toussaint argues that Mr. Cohen's declaration is inadmissible because "he is not competent to testify to the matters stated therein". *See* Doc. No. 82 at 12 fn. 9. Toussaint, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), contends that "Gabriel Cohen is not sufficiently qualified to provide expert opinion in a tax fraud investigation and his unsupported opinions and conclusions provide no real assistance to the trier of fact." *Id.* Scientific, technical or specialized knowledge opinion testimony is only admissible if: "1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. There are three basic requirements that

must be met before expert testimony can be admitted. First, the evidence must be useful to a finder of fact. *See* Fed.R.Evid. 702; *United States v. Brawner,* 173 F.3d 966, 969 (6th Cir.1999). Second, the expert witness must be qualified to provide this testimony. Fed.R.Evid. 702; *United States v. Garcia,* 7 F.3d 885, 889–90 (9th Cir.1993); *Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 382 (5th Cir.1996). Third, the proposed evidence must be reliable or trustworthy. Fed.R.Evid. 702; *Daubert,* 509 U.S. at 590–95, 113 S.Ct. 2786. A trial court has broad discretion in determining the reliability and admissibility of expert testimony. *General Elec. Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *United States v. Espinosa,* 827 F.2d 604, 611 (9th Cir. 1987)("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous.").

■ In his declaration, Mr. Cohen attempts to provide testimony regarding tax payments and returns, as well as the calculations of profits and loss that can only be provided by one with specialized knowledge of the field.[6] *See* Doc. No. 72 at 3–9. Mr. Cohen, therefore, must be qualified as an expert in order to meet the gatekeeper requirements under Fed.R.Evid. 702. A witness may qualify as an expert if he possesses the "knowledge, skill, experience, training or education." Fed.R.Evid. 702. Qualification will be granted as long as the witness shows sufficient expertise through one or more of these bases. *Lavespere v. Niagara Mach. & Tool Works,*

6. Mr. Cohen contends in his declaration that the search warrant affidavit submitted by Toussaint was misleading to the reviewing magistrate judge because it failed to list total taxes paid, including employment taxes and estimated quarterly tax payments, and total costs of goods in the calculation of net profits or losses. Doc. No. 72. Toussaint challenges the relevance of this information, because it plays no role in the ultimate conclusion of whether Plaintiff was not reporting cash income received in his practice in order to avoid tax liability. Doc. No. 81 at 12.

*Inc.,* 910 F.2d 167, 176 (5th Cir.1990). From Mr. Cohen's description of his qualifications in the field, it does not appear to this Court that Plaintiff has met his burden of showing that Mr. Cohen is qualified to testify to specialized knowledge in the tax and business accounting fields. Although Mr. Cohen passed the qualifying examinations for Treasury Agent and IRS Special Agent positions, he has neither worked nor gained any practical experience in the field, and he has not testified that he has gained specialized knowledge through his education in the field of tax preparation or business accounting calculations specifically. In addition, Mr. Cohen is not a tax preparer or business accountant, has not been trained as a tax preparer or business accountant, and has not received formal training in the field. Accordingly, Gabriel Cohen's testimony via declaration regarding the calculation of Plaintiff's tax burden as well as his calculations of net profits or losses from his business is excluded from consideration for failing to meet the requirements under Fed.R.Evid. 702.

Mr. Cohen's testimony regarding the omission of alleged "key" information, including his personal observation regarding the inability of Toussaint's informant "T.C." to have known about Plaintiff's 2002 tax return, as well as Plaintiff's financial records, including mortgage and loan information, credit card debt and other financial information, in contrast, would not fall under the purview of Fed.R.Evid. 702. This testimony is not based upon "scientific, technical or specialized knowledge" opinion, nor is it information that requires skill or expertise in its presentation. Moreover, this testimony, in agreement with the Federal Rules of Evidence, may be useful and helpful to a trier of fact, and therefore may be considered as part of this Court's review of whether there were material omissions are misstatements in the search warrant affidavit. However, the declarant does not speak to the declarant's personal knowledge of the informant's lack of knowledge of the information conveyed to Toussaint. As such, the declaration does not inform the Court regarding the declarant's competence and personal knowledge of the informant's alleged lack of knowledge of facts presented to the Defendant.

■ Even taking into consideration the testimony regarding Plaintiff's financial information, this Court finds very little support for Plaintiff's contention that Toussaint intentionally omitted relevant information from her affidavit "with deliberate falsehood or reckless disregard for the truth" for the purpose of deceiving the reviewing magistrate judge. *See United States v. Stanert,* 762 F.2d 775, 781 (9th Cir.1985). For Toussaint to lose her shield of qualified immunity, Plaintiff must show that she "submitted an affidavit that contained statements [s]he knew to be false or would have known to be false had [s]he not recklessly disregarded the truth." *Hervey v. Estes,* 65 F.3d 784, 788–89 (9th Cir.1995) (citations omitted). Thus, a plaintiff "must make (1) a 'substantial showing' of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred. If a plaintiff satisfies these requirements, 'the matter should go to trial.'" *Liston v. County of Riverside,* 120 F.3d 965, 972–75 (9th Cir.1997), quoting Hervey, 65 F.3d at 788–89. "Materiality is for the court, state of mind is for the jury." *Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir.2002).

■ Plaintiff here cannot meet his burden of making a "substantial showing" that Toussaint committed a deliberate falsehood or reckless disregard for the truth. Although Plaintiff questions the veracity of

Toussaint's informant "T.C.", Plaintiff does not dispute that the affidavit contained information from two other witnesses, as well as detailed information regarding Plaintiff's tax record and bank statements corroborating the witnesses' allegations that Plaintiff was "cash-skimming" from his business enterprise. *See United States v. Angulo–Lopez,* 791 F.2d 1394, 1396 (9th Cir.1986) ("Evidence bearing on the veracity of the informant and his basis of knowledge is considered together with other relevant evidence in making the probable cause determination based on the totality of the circumstances."). This Court notes that Toussaint stated in her affidavit that based upon witness interviews, Plaintiff "had no other known sources of income other than his business." Doc. No. 67, Exh. A at 16. Toussaint, therefore, did investigate other potential sources of income, which also speaks against any showing that Defendant submitted her affidavit to the magistrate judge "with deliberate falsehood or reckless disregard for the truth."

Plaintiff has not correspondingly shown that any statement included in the affidavit that Sterner's total gross receipts were 14% in 2002, and not 30–40% as reported by Toussaint's informant, was done in bad faith. Toussaint's estimate of percentage of cash deposits was taken not only from informant information, but also from bank records analyzed. Doc. No. 67, Exh. B. The record shows that, even when 14% is taken as the cash payment level, the bank records showed deposits of only 0–5% in cash into his accounts, demonstrating that the majority of Plaintiff's cash payments remained unaccounted for and supporting Toussaint's reasons to believe that Plaintiff was cash-skimming and diverting it to other purposes. *Id.* In addition, Plaintiff admits that he practiced unconventional methods of dealing with cash received in his business, methods that were likely beyond any tracking means by Plaintiff, *see* Doc. No. 70 at ¶ 22, or Defendant. Plaintiff's arguments, therefore, are unpersuasive. Further, based upon this Court's independent review of the affidavit, this Court finds that the affidavit supported the probable cause finding made by the magistrate judge. Accordingly, this Court finds that Plaintiff has not met the heightened pleading standard of establishing that the defendant knowingly or recklessly misled the magistrate judge.

*b. Seizure of Patient Files*

Toussaint argues that the scope of the search was not exceeded when Plaintiff's entire patient files were seized during the search. Doc. No. 81 at 19. Toussaint first rebuts Plaintiff's contentions that the patient records were unnecessary because the government already had in their possession duplicative receipt and payment information contained in Plaintiff's daily logs and computer accounting programs. *Id.* Toussaint also relies on the language of the search warrant itself in seizing Plaintiff's patient records because the payment records were "interspersed throughout the file and were co-mingled with patient personal information and treatment history." Doc. No. 64 at 27. Toussaint states that a review of the files showed that patient receipts were co-mingled with other patient information and in light of the sheer volume of patient files, it would have taken several days to complete a review and separation of the relevant financial receipt documents. Doc. No. 81 at 20. Toussaint finally states that she was concerned with disassembling the files, and that if the contents were separated from the files, "it would become difficult, if not impossible, to later reconstruct the files." *Id.*

Plaintiff rebuts this claim, and states that the payment records were physically separated from patient medical records by

being secured on the opposite side of the folder. Doc. No. 68. Plaintiff points to his declaration that the payment records were separated from the medical records in the patient files. Plaintiff also provides a declaration from Ms. Sissaly Ann St. Onge–Sterner, who states that she personally explained to Toussaint how the patient files were maintained, i.e. the financial information was on one side of the folder physically separated from the medical records. Doc. No. 64 at 30, citing to Onge–Sterner Decl. at ¶ 6. Plaintiff rebuts that Defendant should have known, having unlimited access to three of Plaintiff's former employees, that the payment records were easily severable from the patient files. Plaintiff alleges that Defendant, instead, chose to remove the entire patient file in furtherance of the alleged conspiracy to obtain evidence against Plaintiff of medical marijuana prescriptions. Doc. No. 68 at 27.

Toussaint, in her declaration, states that a sample review of Plaintiff's patient files revealed that the "payment records for each patient were interspersed throughout the file and were thoroughly co-mingled with the other patient records including personal information and treatment history." Doc. No. 67 at ¶ 39. Toussaint also found that "[i]n many files, the payment and treatment history were stapled or fasten [sic] together." Id. Furthermore, Toussaint found that "many of the cash receipts did not clearly reflect the patient's name and the date of treatment," which made it "difficult, if not impossible, to later reconstruct the files." Id. Although Plaintiff points out that his standard operating procedure was to file patient payment records separate from the medical records and presents declarations in support of his contentions, Plaintiff importantly does not dispute Toussaint's findings concerning the condition of the specific files or the cash receipts reviewed by Toussaint. Plaintiff only states that it was generally explained to Toussaint where the financial information was maintained in the patient files, and not whether all files were maintained in this organized fashion, nor that all cash receipts contained enough information to later match the document with the correct file. Plaintiff, therefore, does not dispute Toussaint's contention that the sample files and cash receipts she reviewed were intermingled, or otherwise lacking sufficient identification information to allow an investigator to identify and remove the material documents and later return the extracted documents to their rightful file.

■ This Court also agrees with Toussaint's assessment that the payment records could not be reasonably severed from their respective patient files within a reasonable period of time. Plaintiff does not dispute Toussaint's assessment that it would have taken at least "several days to complete the search based upon the large number of patient files in both the Redwood Street and El Cajon offices." Doc. No. 67 at ¶ 39. Plaintiff only argues that the scope of the warrant does not suggest Toussaint's interpretation that the search could not be completed within a "reasonable amount of time." Whether the payment records could be "reasonably [ ] severed from the ... patient file" impliedly injects time on-site and personnel resources considerations into the reasonableness of Defendant's search. Toussaint's assessment reflects that the search of the files would have taken several days and would have required numerous agents and law enforcement personnel resources on scene to insure the integrity of the search, thereby inconveniencing not only Plaintiff Sterner, but also his medical practice, including his patients. This Court finds that Defendant Toussaint's assessment, based upon her experience, was reasonable. This Court, therefore, finds no genuine

issue of disputed fact regarding the state of the sample files that Defendant Toussaint reviewed and the removal of all files to facilitate the search. Viewing the evidence in the light most favorable to Plaintiff, this Court finds Toussaint's actions were within the scope of the warrant. Accordingly, this Court finds that Toussaint's conduct did not violate Plaintiff's Fourth Amendment rights by allegedly seizing patient files outside of the scope of the instant search warrant.

### c. Alleged Excessive Force

Plaintiff alleges in his complaint that Toussaint used excessive force in executing the search warrant. Cplt. at 22. Toussaint argues Plaintiff was not subject to excessive force at her hands during the execution of the search warrant. Doc. No. 64 at 30. Defendant points out that neither the complaint, nor Plaintiff in his briefings, states that Toussaint personally was present during Plaintiff's experiences with the alleged excessive force. Id. at 29. Toussaint states that she was the last to enter the office, she was not present when the armed federal agents allegedly yelled and pounded on the office door, and swung the door open with force. Id. at 30. Toussaint also claims, and Plaintiff does not dispute, that she did not unholster her gun, and did not handcuff, detained or otherwise restrain Plaintiff. Id. Toussaint states that because no proof of direct personal physical contact with Plaintiff was alleged, she cannot be held vicariously liable for the conduct of another. Id. at 31. Toussiant also contends that there is no "legal authority that prohibits or restricts law enforcement officers from carrying weapons, and from unholstering those weapons during protective sweeps conducted upon the initial entry into a closed building in connection with the execution of a search warrant." Id. at 32. Plaintiff

does not address these points in his opposition.

Liability for damages claims arising under section 1983 requires plaintiff to demonstrate personal participation by defendant actors. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act or prevent them." *Id.* Although Plaintiff does state that Toussaint was the "leader of the team" which searched his premises, *see* Cplt. at 4, he does not allege that she participated in or directed the alleged violations, or knew of the violation and failed to prevent them.

Moreover, Plaintiff fails to show that the force used during the search was not "objectively reasonable." As Toussaint correctly points out, Supreme Court case law informs that the "reasonableness of a particular application of force should be judged not with the clarity of 20/20 hindsight but from the perspective of a reasonable officer on the scene." Doc. No. 64 at 31, citing to *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In the instant matter, although Toussaint did not have information that Plaintiff could have been armed, her interviews with Plaintiff's former employees indicated that he was aggressive at times, and violent because of his steroid use. Doc. No. 64 at 33. This Court agrees with Toussaint that the act of officers entering into an unknown building and conducting a protective sweep is not *per se* illegal or unconstitutional. A protective sweep of the premises would be warranted in the instant situation. *Bernstein v. United States,* 990 F.Supp. 428, 437 (D.S.C.1997) (court finding that protective sweep of premises by IRS agents was warranted

when executing a search warrant for evidence related to tax fraud).

Finally, the facts here do not suggest that Plaintiff was unlawfully detained by Toussaint during the search. Plaintiff does not specifically point to Toussaint's role in his alleged unlawful detainer, and Plaintiff does not rebut Defendant's statements that he was told "shortly after the search commenced that [Plaintiff and Stonge] were not under arrest and were free to leave the premises during the search." Doc. No. 64 at 35. Toussaint further points out that Plaintiff "decided to voluntarily remain in the office during the search." Although Plaintiff does allege in his complaint that he was interrogated for 2-1/2 hours at his premises on matters unrelated to the tax raids, he does not allege that Toussaint interrogated him, but rather his interrogation was conducted by an uncharged IRS Special Agent. *See* Cplt. at 16. Plaintiff provides no basis, therefore, that he was unlawfully detained and interrogated by Toussaint during the search.

Accordingly, Plaintiff's allegations regarding Fourth Amendment violations for excessive force and illegal detention during the search should be dismissed.

### d. Alleged Conspiracy

Plaintiff finally alleges that Toussaint unlawfully retaliated against Plaintiff and his patients in violation of their First Amendment right "to consult with Dr. Sterner for the purpose of freely discussing their medical conditions and treatment recommendations" by participating in a conspiracy with the DEA. Cplt. at 23. Toussaint argues that she was not acting as a "stalking horse" for the DEA, and therefore did not violate Plaintiff's First Amendment rights by participating in any alleged conspiracy to suppress his medical speech under *Conant*, or his Fourth

Amendment rights. Doc. No. 64 at 21. Toussaint cites to *United States v. Watts*, 67 F.3d 790 (9th Cir.1995), to support her position that more than a mere collaboration between officers is necessary to show a violation of Plaintiff's Fourth Amendment rights. *Id.* at 22. Toussaint asserts that "[t]he only connection between the DEA and the searches in question was that the DEA referred this matter to the IRS based upon specific information provided by Sterner's former employee regarding possible tax crimes." *Id.* at 23. Toussaint points to her declaration as support that "at no time did she undertake the tax investigation with the intent to retaliate against Sterner for recommending medical marijuana or, as an indirect means of circumventing the injunction entered in *Conant*." *Id.* at 23. Defendant also states that a First Amendment retaliation claim cannot stand if probable cause is found, and because Toussaint had probable cause to obtain the search warrant, "then Sterner should not be able to maintain a separate claim under the First Amendment for very [sic] same conduct." *Id.* at 41.

Plaintiff rebuts by alleging that a conspiracy between Defendants Toussaint and Brasich was evident at the outset. Plaintiff first points to Toussaint's act of telephoning Defendant Brasich just immediately prior to the initiation of the raid. Doc. No. 68 at 30, citing to Toussaint Decl. at ¶ 26. Plaintiff also proffers a declaration by Ms. Sissaly Ann St. Onge–Sterner regarding the actions of the officers immediately after the initiation of the raid. *Id.* at 31. Ms. Onge–Sterner points out that the officers specifically sought out narcotics, especially marijuana, and were disappointed to find out that a bag of marijuana found in her fanny back did not belong to Plaintiff. *Id.* Finally, Ms. Onge–Sterner also declares that "in the past two years following execution of the warrants and

seizure of the patients' files, we have been contacted by a dozen or more patients who have been raided by the DEA; three of the patients told us that Steve Reed was present at raids on their premises, and said: 'Steve Reed[7] has it in for Dr. Sterner.' " *Id.* at 32.

 Taking the evidence in the light most favorable to Plaintiff, this Court finds that Plaintiff has failed to make a showing that a genuine issue of material fact is present in regards to the presence of a conspiracy that may have deprived Plaintiff of his First or Fourth Amendment rights. Plaintiff does not dispute that Toussaint was conducting a tax investigation as a result of the information given to her by co-Defendant Brasich, nor that it was clearly established law that agencies cannot collaborate with each other. *See Watts,* 67 F.3d at 793–94. Plaintiff only points to a phone call by Defendant Toussaint to Defendant Brasich prior to the initiation of the raid, contending that the precautionary call was a "camouflage ... in furtherance of their conspiracy," as well as the alleged behavior of the officers during the execution of the warrant. Doc. No. 68 at 30–31. Here, the Court has found probable cause existed to obtain and execute a warrant based upon the tax investigation. Importantly, Plaintiff does not discuss, and therefore impliedly concedes, that under IRS policies and procedures, Toussaint was obligated to make the phone call to a DEA agent, and obligated to call DEA Agent Reed when marijuana was found on the premises, *see* Doc. No. 68 at 30, citing to Toussaint Declaration, Doc. No. 67 at ¶ 26, during the execution of a valid warrant. Plaintiff's tenuous arguments that Defendant Toussaint participated in a conspiracy based upon conduct

that Toussaint was obligated to undertake is, therefore, unpersuasive to this Court.

That several of Plaintiff's patients may have been raided by the DEA after the instant incident does not cure this deficiency. Although Plaintiff attempts to tie Defendant Toussaint to this circumstantial evidence by contending that she was the only one who examined Plaintiff's patient files, Plaintiff misplaces his burden of proof as to Defendant Toussaint's participation in the alleged unlawful conduct. Plaintiff only points to alleged holes in her declaration by stating that "Toussaint does not deny she made copies of the cannabis patients' medical and other information nor does she deny that she made a list of Dr. Sterner's cannabis patients [sic] ... Toussaint does not deny that the DEA agents went through the cannabis patient files during execution of the raids." Doc. No. 68 at 32. Plaintiff, therefore, attempts to argue that Toussaint's *non-statements* provide proof that she conspired to work with the DEA by providing copies of Plaintiff's cannabis patient files, as well as allowing DEA agents to peruse the files. Plaintiff's accusations, without more, cannot avoid summary judgment on his claim. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

In addition, Plaintiff has not made a showing that "chilling his [ ] speech was a substantial or motivating factor in [Toussaint's alleged] wrongful conduct," nor that Toussaint's actions were groundless. *See Awabdy v. City of Adelanto,* 368 F.3d 1062, 1071 (9th Cir.2004); *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994). Toussaint in her declaration states unequivocally that she did not undertake the criminal tax investigation of Plaintiff as a pretense for retaliating against Plaintiff's

---

**7.** Plaintiff alleges that Steve Reed was the DEA agent present during the search of his business and premises, and that he was re-

ferred to Toussaint by Defendant Brasich. Agent Reed is not a named defendant in this matter.

participation in making medical marijuana recommendations to patients, nor did she "undertake a tax investigation of [Plaintiff] in order to retaliate against him or his patients or to inhibit or interfere with Sterner's communication with his patients regarding the use of medical marijuana or other controlled substances." Doc. No. 67 at ¶ 14.

In sum, Plaintiff does not meet his burden of showing that Toussaint's substantial or motivating factor in the tax investigation was to interfere or inhibit Plaintiff's professional speech with his patients, violating his First Amendment rights.

### 2. *Second Inquiry: Reasonableness of Defendant Toussaint's Actions*

Because Defendant Toussaint did not violate Plaintiff's First or Fourth Amendment rights, this Court need not inquire further into the reasonableness of Defendant Toussaint's actions. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

### 3. *Conclusion*

In light of the foregoing, this Court GRANTS Defendant Toussaint's summary judgment motion of Plaintiff's allegations of First and Fourth Amendment violations based upon qualified immunity.

### *CONCLUSION AND ORDER*

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss, or in the alternative motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**:

1. Defendant Toussaint's motion to dismiss Plaintiff's complaint based on his lack of standing to assert claims on behalf of his patients is **DENIED**.

2. Defendant Toussaint's motion to dismiss Plaintiff's claim for injunctive relief is **DENIED IN PART and GRANTED IN PART**. To the extent that Plaintiff seeks

to enjoin the use or dissemination of patient information and/or identities, or any other information collected, related to any civil or criminal investigation concerning the assessment or collection of taxes, Defendant's motion is **GRANTED**. To the extent that Plaintiff seeks to enjoin the use or dissemination of patient information and/or identities to other entities or agencies for any purpose unrelated to any civil or criminal investigation concerning the collection and assessment of taxes, Defendant's motion to dismiss is **DENIED**.

3. Defendant Toussaint's motion to dismiss under Fed.R.Civ.P. 12(b)(6) because it fails to adequately allege conspiracy claims against Defendant is **DENIED**.

4. Defendant Toussaint's motion for summary judgment of Plaintiff's First and Fourth Amendment claims based on qualified immunity is **GRANTED**.